## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

HENRY SMITH, individually;

           Plaintiff(s),

           v.

JUUL LABS INC.; ALTRIA GROUP, INC.;
and PHILIP MORRIS USA, INC.

           Defendant(s).

Civil Action No.:

**COMPLAINT**

DEMAND FOR JURY TRIAL

1:19-cv-1231 (FJS/DJS)

Plaintiff Henry Smith ("Plaintiff"), by and through his attorneys Klafter Olsen & Lesser LLP and Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C., alleges as follows:

### INTRODUCTION

1.    This is a products liability action alleging personal injuries arising out of Defendants' design, manufacture, assembly, promotion, marketing, sale, delivery, distribution and/or supply of JUUL e-cigarettes and JUUL pods.

2.    Plaintiff purchased, used, became addicted to, and/or has been otherwise harmed by the Electronic Nicotine Delivery Systems (hereinafter, "ENDS")[1], including but not limited to, electronic cigarettes, e-cigarettes, vaporizers, pods, e-liquids, and their component parts, manufactured, designed, assembled, promoted, delivered, marketed, sold, and/or supplied by Defendants.

3.    As outlined in greater detail herein, Defendants designed, manufactured, assembled, installed, delivered, marketed, sold, supplied, and or otherwise took action with

---

[1] As used in this Complaint, "ENDS" refers to and includes all nonlighted, noncombustible devices that employ a mechanical heating element, battery, or circuit, regardless of shape or size, to produce aerosolized or vaporized nicotine for inhalation into the body of a person, including but not limited to a device that is manufactured, distributed, marketed, or sold as an e-cigarette, e-cigar, e-pipe, e-hookah, vape pen, or any other similar product with any other product name or descriptor, including component parts.

respect to the above referenced products, specifically targeting Plaintiff through misleading, deceptive, and unconscionable practices.

4.      Defendants' unlawful practices have led to Plaintiff becoming addicted to e-cigarettes and vaping, to his severe detriment.

5.      In November 2018, after approximately three years of advertising, Defendant JUUL Labs, Inc. (hereinafter, "JUUL") shut down and deleted its social media accounts after years of promotion, advertising, and marketing directed at minors and young adults.

6.      Such marketing was done fraudulently with the intent to mislead individuals – such as Plaintiff – into purchasing JUUL e-cigarettes, pods, and related ENDS.

7.      When Defendants launched their products, they failed to warn of any adverse effects that they knew, or should have known, would likely occur, including but not limited to addiction, increased risk of heart disease and stroke, increased risk of pulmonary disease, changes in brain functionality leading to anxiety, depression, and other long term mental health conditions, decreased functionality of the endocrine system, heightened risk of cancer, and negative effects on fertility.

8.      Defendants fraudulently marketed their products as safer than conventional cigarettes.

9.      Defendants also fraudulently marketed their products as nicotine cessation devices.

10.      The Centers for Disease Control and Prevention (hereinafter, "CDC") and the Food and Drug Administration (hereinafter, "FDA"), along with numerous recognized medical experts, have indicated that electronic cigarettes should not be used by youth, young adults, pregnant women, or adults who do not currently use tobacco products and that users of electronic

cigarettes and vaporizers should cease using such products until sufficient research on the long-term effects of such products can be completed.

11.     Additionally, the CDC, FDA, and numerous recognized medical experts have advised adult smokers who are attempting to quit to refrain from using ENDS and instead use evidence-based treatments, including counseling and FDA-approved medications.

12.     JUUL products have not been approved by the FDA as a smoking cessation therapy or in any other capacity.

13.     Currently, Defendants have offered no meaningful remedies or efforts at mitigation of the use, sale, or exposure to minors beyond completely inadequate warnings generally designed for conventional cigarettes.

14.     Through this action Plaintiff seeks, inter alia, reasonable and adequate compensation for pain and suffering, emotional distress, financial harm, medical expenses, and disfigurement, as well as in the form of injunctive relief, and continued medical monitoring over time, at Defendant's expense.

## **VENUE**

15.     Venue is proper in the Northern District Court of New York pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 and there is diversity of citizenship of the parties.

16.     This Court has personal jurisdiction over all Defendants as Defendants do business in New York and have sufficient minimum contacts in New York.  Defendants intentionally avail themselves of the markets in this State through the promotion, marketing, sale, and distribution of the products at issue in this lawsuit.

17.     A substantial part of the events and/or omissions giving rise to the claims at issue in this Complaint arose in New York.

## THE PARTIES

### Plaintiff Henry Smith

18.     Plaintiff Henry Smith is an individual domiciled in Saratoga Springs, New York.

19.     Plaintiff was born in 1977.

20.     Plaintiff purchased ENDS manufactured, designed, assembled, installed, delivered, marketed, sold, and/or supplied by Defendants based on false, misleading, deceptive, unconscionable, and/or inadequate practices, resulting in his severe detriment.

21.     Plaintiff had never smoked cigarettes prior to using JUUL.

22.     When he began purchasing JUUL e-cigarettes, he believed based on JUUL's advertisements and marketing, that these products were safe for use, were safer than conventional cigarettes, and would not cause adverse health effects.

23.     When he began purchasing JUUL e-cigarettes, he was unaware of the addictiveness of these products.

24.     When he began purchasing JUUL e-cigarettes, he was unaware that these products contained high levels of nicotine.

25.     Plaintiff saw JUUL advertisements, including but not limited to, on social media and in local stores.

26.     Plaintiff was attracted to, and most purchased, the cool mint flavored JUUL products.

27.     Plaintiff would not have purchased JUUL products had he known that they were highly addictive, contained nicotine in concentrations more potent than conventional cigarettes, and/or could cause adverse health effects.

28.     Plaintiff smokes approximately one to two full pods per day.

29.     As a result of his use of JUUL e-cigarettes, Plaintiff has suffered, and continues to suffer, severe adverse health effects, including but not limited to addiction.  He has attempted to stop using JUUL products in the past, but has been unsuccessful due to his addiction.

30.     Due to his JUUL e-cigarette use, Plaintiff suffers, and continues to suffer, adverse consequences and permanent adverse health effects.

## Defendants

31.     Defendant JUUL Labs, Inc. is Delaware corporation with its principal place of business located at 560 20th Street, San Francisco, CA 94107.  JUUL originally operated under the name of PAX Labs, Inc.  In 2017, it was renamed JUUL Labs, Inc.  JUUL manufactures, designs, assembles, installs, delivers, markets, sells, promotes, and/or supplies ENDS, including but not limited to, e-cigarettes, vaporizers, e-liquids, and associated component parts.

32.     Defendant Altria Group, Inc. ("Altria") is a Virginia Corporation with its principal place of business located at 6601 West Broad Street, Richmond, Virginia 23230.

33.     Defendant Philip Morris USA, Inc. ("Philip Morris") is a wholly owned subsidiary of Altria.  Philip Morris is a Virginia corporation with its principal place of business located at 615 Maury Street, Richmond, Virginia, 23224.  Philip Morris is engaged in the manufacture and sale of conventional cigarettes in the United States.  Philip Morris is the largest conventional cigarette company in the United States.

34.     Altria and Philip Morris have a thirty-five (35) percent ownership in JUUL.

## FACTUAL BASIS FOR THE RELIEF REQUESTED

35.     Plaintiffs incorporates all prior paragraphs of the Complaint as if set forth in full herein.

36.     Defendants JUUL, Altria, and Philip Morris will be referred to hereinafter collectively as "JUUL" or "Defendants."

37.     JUUL manufactures, designs, assembles, installs, delivers, markets, sells, promotes, and/or supplies ENDS, including but not limited to, e-cigarettes, vaporizers, e-liquids, and associated component parts and engages in the manufacture, design, assembly, delivery, marketing, advertising, sale, promotion, distribution, and/or supply of ENDS in the state of New York and elsewhere.

38.     Defendant JUUL began manufacturing, designing, assembling, delivering, advertising, promoting, marketing, selling, and/or supplying e-cigarettes and associated ENDS in approximately 2015.

39.     Defendants' ENDS, including e-cigarettes, pods, e-liquids, and component parts, deliver dangerous toxins and carcinogens to users, including Plaintiff.  Nicotine itself is a toxic chemical associated with cardiovascular, reproductive, and immunosuppressive problems.

40.     Nicotine adversely affects multiple bodily systems.

41.     Numerous medical experts, including the CDC, have advised that additional research is necessary to determine the adverse effects of the multiple toxins present in e-liquids, but evidence suggests that short term usage can adversely affect pulmonary function because it introduces foreign substances into the lungs.

42.     The addictive qualities of ENDS including, specifically, JUUL's products well exceed those of other nicotine delivery devices, including, specifically, cigarettes.  While

Defendants are aware of this, the consuming public, including Plaintiff herein, is not and was not.

43.     Since 2015, JUUL has become the dominant e-cigarette manufacturer in the United States.

44.     A recent study from Stanford University School of Medicine notes that in November 2018, JUUL had 76.1 percent of the United States e-cigarette market.[2]

45.     JUUL e-cigarettes look like a USB flash drive, can charge in a computer, and are small enough to be hidden in a closed hand.  JUUL e-cigarettes are used by heating up a small cartridge containing oils, called "JUUL pods", "pods", or e-liquids, to create vapor, which quickly dissolves in the air.  Other "pod" or "e-liquid" manufacturers design, manufacture, sell, and promote pods in numerous flavors that are able to be used with JUUL e-cigarettes.

46.     JUUL pods include the ingredients nicotine, benzoic acid glycerine, and propylene glycol.

47.     JUUL currently designs, assembles, delivers, markets, sells, promotes, and/or supplies eight flavors of "pods," including mango, fruit, cucumber, crème, and mint.

48.     JUUL's website states that JUUL "pods" are proprietary.

49.     Despite being marketed as a safe alternative to conventional cigarettes, JUUL pods deliver a higher concentration of nicotine per pod than a pack of cigarettes and utilize a device that is easier to conceal than a conventional cigarette, making it more addictive and attractive to individuals than conventional cigarettes.[3]

---

[2] Jackler, Robert K., et al. "JUUL Advertising Over Its First Three Years on the Market." Stanford Research into the Impact of Tobacco Advertising. January 2019.
[3] Esther E. Omaiye, MS et al., Toxicity of JUUL Fluids and Aerosols Correlates Strongly with Nicotine and Some Flavor Chemical Concentrations (Dec. 2018), available at:
https://www.biorxiv.org/content/biorxiv/early/2018/12/09/490607.full.pdf

50.     The adverse effects of nicotine on brain development and bodily systems are well-studied.  Nicotine adversely affects the heart, eyes, reproductive system, lungs, and kidneys.

51.     JUUL pods were designed to decrease the perceived harshness of nicotine ingestion, thus creating a greater likelihood of abuse from new users.[4]

52.     This design shows Defendants' intention to recruit nonsmokers to use its e-cigarettes.

53.     The JUUL e-cigarette is operated when a sensor in the device senses suction on the mouthpiece, at which time the battery activates the heating element which converts the solution in the pod into a vapor.

54.     A light in the e-cigarette indicates the battery level.

55.     Defendants designed its e-cigarettes and associates ENDS to be simplistic, easy to use, and easy to conceal.

56.     Such a defective design, and the nature of ENDS devices, has caused an increased risk of nicotine addiction among users.

57.     Recent studies have shown that the amount of nicotine per puff of a JUUL e-cigarette is substantially the same, or greater than, that of a conventional cigarette.[5]

58.     Defendants also specifically implemented a marketing scheme designed to attract individuals to purchase their highly addictive products, while using false, deceptive, unconscionable, and misleading advertising regarding the health effects of their products and their relative safety to conventional cigarettes.

---

[4] Duell, James F. Pankow, and David H. Peyton, Free-Base Nicotine Determination in Electronic Cigarette Liquids by 1H NMR Spectroscopy, 31 Chem. Res. Toxicol. 431, 431 (2018).
[5] Reilly et al., Free Radical, Carbonyl, and Nicotine Levels Produced by JUUL Electronic Cigarettes, 3.

59.     To date, the CDC and FDA have reported at least 805 cases of pulmonary illness across 44 states related to the use of electronic cigarettes.

60.     Defendants knew or should have known that e-cigarettes were not safe for consumers and posed a similar, if not increased, risk of nicotine dependence than conventional cigarettes, but failed to disclose this information to the public, including Plaintiff.

61.     Defendants' failure to adequately warn users of the effects of the amount of nicotine contained in its products and of adverse health effects shows Defendants' intent to attract consumers to use, and become addicted to, their products under false pretenses.

62.     JUUL did not add appropriate nicotine warnings on its packaging until August 2018, after being forced to do so.

63.     JUUL has not been approved by the FDA or any other entity as a smoking therapy or smoking cessation device, despite explicitly and implicitly advertising as such for years through the "Switch" to JUUL marketing campaign in which it advertised itself as an alternative to conventional cigarettes.

64.     Despite not being approved as a smoking cessation device, Defendants have not ceased or diminished, nor materially changed, their marketing efforts to entice individuals to purchase and use JUUL.

65.     The FDA has specifically stated that any smokers attempting to quit should seek counseling or FDA approved smoking cessation methods rather than e-cigarettes.

66.     On September 9, 2019, the FDA sent Defendant JUUL a "warning letter" finding that JUUL fraudulently and unlawfully marketed, sold, and distributed its products by advertising them as safer than conventional cigarettes, without the appropriate scientific evidence and FDA Order to make such a claim.

67.     JUUL was well aware that its fraudulent advertising and marketing was targeted towards encouraging and attracting individuals towards its products, without revealing the highly addictive and dangerous nature thereof.

68.     JUUL failed to disclose the serious adverse health effects of using its products, including the risk of addiction they pose, while falsely marketing them as safer than conventional cigarettes and as smoking cessation devices.  Nonetheless, JUUL has consistently attempted to expand its marketing to entice new e-cigarette users.

69.     Even after adding the warnings that its products contain nicotine, JUUL continued to promote its flavors that were most popular and promote a campaign explicitly and implicitly indicating that these products were safer than conventional cigarettes.

70.     Since its inception, JUUL has engaged in false, misleading, and fraudulent advertising, based on the assertion that its e-cigarettes and associated ENDS were a safe and/or safer alternative to conventional cigarettes, without providing any basis, medical or otherwise, to assert such a claim.

71.     JUUL has engaged in deceptive and misleading marketing and advertising specifically directed to engage individuals and encourage them to purchase, use, and become addicted to e-cigarettes and ENDS, and further did so falsely and deceptively by failing to inform consumers of the heightened risk of addiction they pose.

72.     The seriousness of the danger faced by Plaintiff due to the actions of Defendant cannot be overstated.

73.     Through this action, Plaintiff seeks, inter alia, reasonable and adequate compensation for pain and suffering, emotional distress, medical expenses, and disfigurement, as well as in the form of continued medical monitoring over time, at Defendants' expense.

## COUNT ONE

### Negligence

74.     Plaintiff incorporates all prior paragraphs of this Complaint as if set forth in full herein.

75.     At all times material to the within cause of action, Defendants were engaged in doing business throughout the State of New York and elsewhere, specifically having designed, manufactured, assembled, distributed, and sold certain e-cigarettes and associated ENDS, together with their component parts, in interstate commerce, in New York and elsewhere.

76.     It was at all times foreseeable to Defendants that failure to provide adequate warnings regarding the potential dangers, including as to addition, of e-cigarettes and ENDS would result in harm to Plaintiff.

77.     This includes, but is not limited to, the failure to provide adequate information regarding the medical effects of using e-cigarettes and ENDS, including their harms and addictive qualities, the failure to provide adequate warnings on the packaging of e-cigarettes and ENDS regarding adverse health effects, the failure to provide adequate warnings on e-cigarettes and ENDS regarding the potential for adverse health effects and/or malfunction, and the failure to install proper safeguards to discourage the use of e-cigarettes and ENDS by new e-cigarette users.

78.     It was also at all times foreseeable that the inadequate, improper, and unlawful design of Defendants' e-cigarettes and associated ENDS would attract, enable, and encourage individuals, including Plaintiff, to use such products more frequently than traditional cigarettes and also to become addicted to them.

79.     Despite this, Defendants failed to provide such reasonable safeguards and take other reasonable actions that a prudent person under similar circumstances would have taken to eliminate or minimize the risk of danger to Plaintiff.

80.     The injuries suffered by Plaintiff were directly and proximately caused by the negligence of Defendants as a result of the actions or inaction Defendants took in manufacturing, designing, assembling, installing, marketing, selling, delivering, or otherwise handling the subject e-cigarettes and ENDS and component products.

81.     The conduct of Defendants was both a proximate cause and a cause in fact of the exposure and damages inflicted on Plaintiff and the expenses made necessary by such exposure.

82.     As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages.

83.     WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT TWO

### Violation of the New York General Business Law § 349

84.     Plaintiff incorporates paragraphs 1-73 of this Complaint as if set in full herein.

85.     The New York General Business Law § 349 prohibits businesses from engaging in any deceptive acts or practices in connection with consumer sales.

86.     New York General Business Law § 349 also allows an individual injured due to any violation of this section to enjoin such unlawful acts or practice and to recover actual damages.

87.     New York General Business Law § 349 further allows treble damages and attorneys' fees to be awarded for violation of this section.

88.     Defendants violated New York General Business Law § 349 by misrepresenting the e-cigarettes and ENDS, including e-liquids, pods, and component parts, to be safe for use.

89.     Defendants also violated New York General Business Law § 349 by suppressing and/or omitting material facts regarding the addictiveness and safety of e-cigarettes and ENDS.

90.     Defendants also violated New York General Business Law § 349 by engaging in unconscionable conduct with respect to misrepresenting their products as a safe and/or safer alternative to traditional cigarettes to attract new users.

91.     Each false pretense, misrepresentation, unconscionable act, and/or knowing omission of material fact by Defendants constitutes a separate violation of New York General Business Law § 349.

92.     As a direct and proximate cause of Defendants' violation of New York General Business Law § 349, Plaintiff has suffered, and will in the future continue to suffer, injuries and damages.

93.     WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT THREE

### Fraud

94.     Plaintiff incorporates paragraphs 1-73 of this Complaint as if set in full herein.

95.     Defendants fraudulently and deceptively marketed, advertised, distributed, and sold e-cigarettes and associated ENDS as non-addictive or less addictive products than conventional cigarettes.

96.     Defendants failed to disclose the highly addictive nature of their products and the adverse health effects likely to arise therefrom.

97.     Defendants made these fraudulent representations to Plaintiff through advertising and marketing campaigns.

98.     Each misrepresentation and omission was material as it contributed to the evaluations by Plaintiff as to whether to purchase and use Defendants' products.

99.     Defendants knew that their misrepresentations and omissions were false and intended Plaintiff to rely upon these misrepresentations and omissions to purchase their products.

100.    Plaintiff reasonably relied upon Defendants' misrepresentations and omissions to his severe detriment.

101.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

**COUNT FOUR**

**<u>Violation of the New York General Business Law § 350</u>**

102.    Plaintiff incorporates paragraphs 1-73 of this Complaint as if set in full herein.

103.    New York General Business Law § 350 addresses general advertising practices.

104.    New York General Business Law § 350 provides, in relevant part, the following:

> The term 'false advertising' means advertising, including labeling, of a commodity, … if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things)

> not only representations made by statement, word, design, device,
> sound or any combination thereof, but also the extent to which the
> advertising fails to reveal facts material in the light of such
> representations with respect to the commodity or employment to
> which the advertising relates under the conditions prescribed in
> said advertisement, or under such conditions as are customary or
> usual.

105.    In its advertisements, Defendants used illustrations, graphic depictions, colors,

models, influencers, and type that resulted in obscuring material facts regarding the addictiveness

and misrepresenting the safety of e-cigarettes and ENDS.

106.    Defendants' disclaimers on their advertisements were woefully insufficient

relative to other aspects of the advertisements.

107.    Defendants have failed to substantiate through any credible documents, records,

or any other written proof its claims regarding the safety of its products, including but not limited

to the assertion that e-cigarettes and ENDS assist conventional cigarette smokers to quit smoking

and/or that e-cigarettes and ENDS are a safe and/or safer alternative to conventional cigarettes.

108.    The above referenced violations constitute multiple violations of New York

General Business Law § 350.

109.    Each violation of New York General Business Law § 350 by Defendants

constitutes a per se violation of New York General Business Law § 349.

110.    As a direct and proximate cause of Defendants' violation of New York General

Business Law § 350, Plaintiff has suffered, and will in the future continue to suffer, severe

injuries and damages.

111.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally

or in the alternative in the amount of damages and together with interest, costs of suit, and such

other relief as is just and proper.

**COUNT FIVE**

**Strict Liability- Failure to Warn**

112.    Plaintiff incorporates paragraphs 1-73 of this Complaint as if set in full herein.

113.    At all times material to the within cause of action, Defendants were engaged in doing business throughout the State of New York and elsewhere, specifically having designed, manufactured, assembled, distributed, and sold certain e-cigarettes and ENDS and associated products, together with their component parts, in interstate commerce, in New York and elsewhere.

114.    As discussed above, it was foreseeable to Defendants that individuals, including Plaintiff, would use and misuse Defendants' products to their detriment.

115.    Plaintiff received JUUL products in the same conditions in which they manufactured, designed, distributed, and sold and used their products in a manner reasonably intended by Defendants.

116.    The risks of using Defendants' products were known to Defendants at the time of manufacture, design, distribution, and sale.

117.    The risks of using Defendants' products were unknowable and unexpected to the average consumer, including Plaintiff.

118.    The injuries to Plaintiff were directly and proximately caused by the actions or inactions of Defendants and Defendants are liable to said Plaintiff in this cause of action based upon the theory of strict liability in the following particulars:

    a.      In failing to warn users, including Plaintiff, of the defects, dangers, risks, and/or hazards which existed in the subject e-cigarettes and ENDS;

b.      In failing to design, manufacture, assemble, promote, sell, supply, or otherwise take action with respect to said e-cigarettes and ENDS in accordance with safety codes, regulations, and statutes applicable to same;

c.      In failing to correct the defective and dangerous conditions existing in the subject e-cigarettes and ENDS.

119.    As a direct and proximate result of the actions or inactions of Defendants, Plaintiff has suffered, and will continue in the future to suffer, severe injuries and damages.

120.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

**COUNT SIX**

**Strict Liability- Defective Design**

121.    Plaintiff incorporates paragraphs 1-73 of this Complaint as if set in full herein.

122.    At all times material to the within cause of action, Defendants were engaged in doing business throughout the State of New York and elsewhere, specifically having designed, manufactured, assembled, distributed, and sold certain e-cigarettes and ENDS and associated products, together with their component parts, in interstate commerce, in New York and elsewhere.

123.    As discussed above, it was foreseeable to Defendants that individuals, including Plaintiff, would use and misuse Defendants' products to their detriment.

124.    The injuries to Plaintiff were directly and proximately caused by the actions or inactions of Defendants and Defendants are liable to said Plaintiff in this cause of action based upon the theory of strict liability in the following particulars:

17

a.      In designing, manufacturing, assembling, installing, supplying, or otherwise taking action with respect to the aforesaid e-cigarettes and ENDS in a deficient and defective condition;

b.      In failing to equip said e-cigarettes ENDS with proper safeguards;

c.      In failing to design, manufacture, assemble, promote, sell, supply, or otherwise take action with respect to said e-cigarettes and ENDS in accordance with safety codes, regulations, and statutes applicable to same;

d.      In failing to correct the defective and dangerous conditions existing in the subject e-cigarettes and ENDS.

125.    As a direct and proximate result of the actions or inactions of Defendants, Plaintiff has suffered, and will continue in the future to suffer, severe injuries and damages.

126.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

**COUNT SEVEN**

**Unjust Enrichment**

127.    Plaintiff incorporates paragraphs 1-73 of this Complaint as if set in full herein.

128.    Defendants have been unjustly enriched through their sale of JUUL products based on material misrepresentations and omissions, false advertising, unconscionable business practices, and fraud.

129.    Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff.

18

130.    Defendants knowingly received and retained wrongful benefits and funds from Plaintiff.

131.    It would be inequitable to allow Defendants to retain these benefits and funds.

132.    Plaintiff is therefore entitled to recover from Defendants, as restitution, all money paid for JUUL products, any benefit received by Defendants as a result of such activity, and interest thereon from the time of payment.

133.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

**COUNT EIGHT**

**<u>Breach of Implied Warranty of Merchantability</u>**

134.    Plaintiff incorporates paragraphs 1-73 of this Complaint as if set in full herein.

135.    The Uniform Commercial Code, N.Y. UCC § 2-314 and § 2-315, provide that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

136.    With respect to JUUL products, Defendants warranted that its e-cigarettes and associated ENDS would be merchantable, fit for the ordinary purposes for which they are used, and conform to promises and affirmations of fact made on the container and label.

137.    At the time of delivery, Defendants breached the implied warranties of merchantability and fitness for a particular purpose as their products were defective as alleged above, posed severe safety risks at the time they were sold, and failed to conform to the standard performance of like products in trade.

138.    Defendants are merchants with respect to the subject products sold to Plaintiff.

139.    Defendants' products are not fit for the intended purpose of offering a safe and/or safer alternative to cigarettes because such products when used as intended worsen or aggravate nicotine addiction and cause severe adverse health effects.

140.    As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiff has suffered damages.

141.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT NINE

## Breach of Express Warranty

142.    Plaintiff incorporates paragraphs 1-73 of this Complaint as if set in full herein.

143.    N.Y. UCC § 2-313 provides that express warranties by the seller are created by any affirmation of fact or promise made by the seller to the buyer which related to the goods and becomes a basis of the bargain.

144.    The express warranty creates an obligation that the goods shall conform to the affirmation or promise.

145.    Defendants issued express warranties in connection with their e-cigarettes and associated ENDS that such products were less addictive and less harmful than conventional cigarettes, and that they were smoking cessation devices, through their marketing and advertisements.

146.    The affirmations of fact and promises set forth in Defendants' marketing and advertising became part of the basis of the bargain between Plaintiff.

147.    These affirmations of fact and promises created express warranties that JUUL products would conform to Defendants' affirmations of fact and promises.

148.    Defendants breached their express warranties as JUUL products deliver a more potent source of nicotine than conventional cigarettes and cause severe adverse health consequences.

149.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff suffered damages as he would not have purchased and/or used Defendants' products had he known the true facts about the products.

150.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## COUNT TEN

## Public Nuisance

151.    Plaintiff incorporates paragraphs 1-73 of this Complaint as if set in full herein.

152.    Defendants have engaged in systematic deceptive and unconscionable advertising and marketing of JUUL products.

153.    This misconduct caused and/or substantially contributed towards a public nuisance.

154.    Defendants' misconduct has created or substantially contributed to an unreasonable interference with rights common to the general public, including the right to be free from unreasonable interference with public health, safety, and peace.

155.    Defendants' interference with the public health, safety, and peace has been unreasonable.

156. Defendants' inappropriate and unlawful conduct is responsible for new e-cigarette users, including minors, becoming addicted to nicotine and significantly interfered with the public health, safety, and peace.

157. Defendants' misconduct has produced permanent or long-lasting effects and will continue until and unless Defendants reveal the complete truth about their products, including severe safety and health risks and addictiveness, and take meaningful corrective action.

158. Defendants knew, or should have known, that their unreasonable and unlawful conduct was likely to have a significant adverse impact on public health, safety, and peace.

159. Defendants' conduct is and was unlawful.

160. The negative impact Defendants have had on public health, safety, and peace cannot be overstated, as they have created an epidemic of nicotine dependent individuals through their unlawful conduct.

161. The negative health consequences of Defendants' products will ultimately be borne by the community as a whole.

162. Defendants' products deliver dangerous toxins and carcinogens to their users.

163. The costs associated with Defendants' products include, but are not limited to, costs for medical care, increased insurance costs, an increased strain on the medical system which effects the quality and cost of care available to the public, reduced productivity of JUUL consumers, the cost to society of supporting nicotine ingestion cessation programs, increased life insurance rates, increased social services, increased addiction related crime, and increased disability benefits.

164. Defendants had significant control over the public nuisance they created, including the design, advertising, marketing, promotion, and manufacture of JUUL products.

165.    Defendants could have prevented, or at least significantly reduced, the public nuisance by ceasing improper and unlawful marketing and advertising of its products.

166.    Defendants are not immune from a public nuisance claim.

167.    The damages and costs to society from Defendants' unlawful conduct is significant and was foreseeable to Defendants.

168.    Plaintiff has suffered, and continues to suffer, harm different from that suffered by individual residents of New York.

169.    Plaintiff sues in his public capacity for all appropriate relief to restore the public health, safety, and peace and recover appropriate damages, expenses, costs, and fees.

170.    Defendants are also liable for punitive damages to reflect the aggravating circumstances of their intentional, willful, wanton, malicious, and oppressive conduct. Defendants acted or failed to act knowingly, willfully, deceptively, with gross negligence, maliciously, and/or wantonly with conscious disregard for the public health, safety, and welfare.

171.    WHEREFORE, Plaintiff demands judgment against Defendants, jointly, severally or in the alternative in the amount of damages and together with interest, costs of suit, and such other relief as is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to:

a.    Award actual, compensatory, and consequential damages;

b.    Award all expenses, including incidental past and future expenses, including medical expenses, loss of earnings, and loss of earning capacity;

c.    Award restitution;

d.    Award punitive damages;

e.      Award reasonable attorneys' fees and costs of this case;

f.      Award prejudgment and post-judgment interest;

g.      Award all statutory damages, including double and treble damages as authorized

by statute;

h.      Enter appropriate injunctive relief against Defendants and their officers, agents,

successors, employees, representatives, and/or assigned; and

i.      Such other and further legal, equitable, and declaratory relief as justice requires.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated:  October 4, 2019

By: _____
     Seth R. Lesser
**KLAFTER OLSEN & LESSER, LLP**
Seth R. Lesser
Christopher Timmel
Morgan M. Stacey*
Two International Drive, Suite 350
Rye Brook, N.Y.  10573
(914) 934-9200

**JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.**
Michael A. Galpern*
Zachary M. Green*
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, N.J. 08043
(856) 596-4100

Attorneys for Plaintiff

*Application for *pro hac vice* to be filed